## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ACHIEVEMENT PREPARATORY ACADEMY PUBLIC CHARTER SCHOOL,**<br>**908 Wahler Place, SE**<br>**Washington, D.C. 20032**<br><br>**Plaintiff,**<br>**v.**<br><br>**CAROLYN WILLIAMS, LUKE MCQUEEN, MARIA MENDOZA, KIRAN HASSAN, AND JAMES E. BROWN & ASSOCIATES,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Civ. A. No.:**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Comes now Plaintiff, Achievement Preparatory Academy Public Charter School ("APA"), by and through undersigned counsel, respectfully unto this Honorable Court states as follows:

### Introduction

Plaintiff APA, a local educational agency (LEA) public charter school, brings this action pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. 1415, to recover attorneys' fees related to frivolous and improper complaints brought against it by Defendants, law firm James. E. Brown & Associates (JEB), a private, for-profit law firm, including JEB counsel McQueen, Mendoza, and Hassan, and Ms. Carolyn Williams (collectively, the Defendants). Over a period of two years, Defendants brought six complaints against APA, three that went to hearing. In all three hearings, Plaintiff APA wholly prevailed and Defendants' claims were dismissed with prejudice.

1

Regarding the first hearing (the A.B. Hearing), Plaintiff contends that, prior to filing, Defendants had no evidence or foundation for the complaint's sole allegation that a psychiatric evaluation was necessary, as demonstrated by (i) recent, comprehensive psychological testing that did not indicate a psychiatric evaluation was needed, (ii) meeting notes and discussions with APA and independent, private school-based experts indicating the evaluation was unnecessary, and (iii) the student's private psychiatrist referral only requesting a neuropsychological evaluation (which APA agreed to), not a psychiatric evaluation. Further, Defendants continued to litigate the complaint without expert support: even their own expert witnesses testified that the psychiatric evaluation would not provide educational information (as alleged in the complaint).

Regarding the second and third hearings (the C.W. Hearings), Plaintiff contends that, Defendants filed frivolous, unreasonable complaints in alleging that the individualized education programs (IEPs) that Defendants (both JEB representatives and Ms. Williams) helped develop and agreed to within three months prior was inappropriate. As noted by the Hearing Officer in the first C.W. decision, Defendants had no legal authority to support holding a school district liable to revise an IEP only three months after the IEP in question took effect.

Finally, Plaintiff contends that the Defendants pursued the complaints underlying all three hearings for improper purposes, including to harass, cause unnecessary delay and needlessly increase the cost of litigation, as evidenced by (i) the filing of multiple, frivolous complaints simultaneously, (ii) the mistakes within the complaints as filed, ultimately requiring Defendants to withdraw and/or amend the complaints, (iii) the testimony of Defendant Williams indicating that she would personally owe JEB attorneys' fees if she agreed to settle a complaint, but would

not owe JEB attorney fees if she took a complaint to hearing, and (iv) providing notice of dissent

to an IEP and a request for an evaluation only after filing the relevant complaint.

## Jurisdiction

1. a. This Court has Federal Question jurisdiction pursuant to 28 U.S.C. 1331 to resolve

      issues arising under The Individuals with Disabilities Education Improvement Act

      ("IDEIA"), 20 U.S.C. §§ 1400-1461;

   b. Declaratory relief is authorized by 28 U.S.C. § 1331.

   c. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that all the events giving

      rise to Plaintiff's claims arose in this judicial district.

## Parties

2. Plaintiff, APA, is a District of Columbia public charter school which serves as its own local

   educational agency ("LEA") under the IDEIA for special education purposes.

3. Defendant Luke McQueen is an attorney licensed to practice in the District of Columbia.

   Mr. McQueen represented the legal guardian/parent of A.B. and C.W., minor children who

   at the time of the underlying proceedings resided in the District of Columbia and had been

   identified as students eligible to receive special education and related services, in two

   separate administrative proceedings under the IDEIA. Mr. McQueen represented the parent

   at the time of the filing of several of the due process complaints, including two that went

   to hearing.

4. Defendant Maria Mendoza is an attorney licensed to practice in the District of Columbia.

   Ms. Mendoza represented the legal guardian/parent of A.B. and C.W., minor children who

   at the time of the underlying proceeding resided in the District of Columbia and had been

   identified as students eligible to receive special education and related services, in two

separate administrative proceedings under the IDEIA. Ms. Mendoza represented the parent in the first and second administrative due process hearings in the underlying proceedings.

5.  Defendant Kiran Hassan is an attorney licensed to practice in the District of Columbia. Ms. Hassan represented the legal guardian/parent of C.W., a minor child who at the time of the underlying proceeding resided in the District of Columbia and had been identified as a student eligible to receive special education and related services, in an administrative proceeding under the IDEIA. Ms. Hassan represented the parent in the third administrative due process hearing.

6.  Defendant James E. Brown & Associates ("JEB") is a law firm located at 1220 L Street, NW, Suite 700, Washington, DC 20005. Defendants McQueen, Mendoza, and Hassan were working for JEB at the time of the underlying proceedings. JEB, including JEB attorneys, educational advocates, and legal assistants, represented the parent at the time of the administrative due process hearings in the underlying proceedings.

7.  Defendant, Carolyn Williams, at the time of the underlying proceedings, was the legal guardian and/or parent of A.B. and C.W., minor children who resided in the District of Columbia and had been identified as students eligible to receive special education and related services. Ms. Williams, through JEB's representation, filed six separate administrative due process complaints, three on behalf of each of her sons, against APA.

## **Factual Allegations**

### **I.    A.B. Hearing**

8.  During the 2015-2016 school year, A.B. was progressing academically, but began to exhibit behavioral concerns. A.B. was evaluated for special education and related services and ultimately found not eligible for services under the IDEIA. However, the team agreed

to move forward with developing a 504 plan and to conduct further evaluations. The second round of evaluations was conducted during the spring of 2017.

9. On June 27, 2017, Defendant Williams, represented by Defendant McQueen filed an administrative due process complaint on behalf of A.B. against APA ("A.B.'s First Complaint").

10. On June 28, 2017, A.B. was found eligible as a student with a disability under the IDEIA. A.B.'s first-ever Individualized Education Program ("IEP") was created on July 26, 2017.

11. On August 21, 2017 APA and Defendant Williams entered into a settlement agreement resolving A.B.'s First Complaint.

12. On December 19, 2017, a change-in-placement meeting was held with representatives from APA, an Office of the State Superintendent of Education for Washington, D.C. ("OSSE") representative, Defendant Williams, and Defendant McQueen. At this meeting, despite the OSSE representative's disagreement, the IEP team determined that A.B. required a more restrictive setting and OSSE initiated its location assignment process.

13. A.B. received a location assignment on January 5, 2018 and started attending Accotink Academy on January 16, 2018.

14. Accotink Academy is a private therapeutic day school in Virginia that is licensed by OSSE to serve District of Columbia students with certain disabilities. While APA remains A.B.'s LEA, A.B. attends school at, and receives services from Accotink Academy.

15. On December 26, 2017, Defendant Williams, represented by Defendant McQueen filed a second administrative due process complaint on behalf of A.B. against APA ("A.B.'s Second Complaint"). During the prehearing conference on January 29, 2018, APA objected to the complaint because it alleged a harm that the Defendants were largely responsible for

and because it alleged a violation for a period of time for which A.B. had already been provided compensatory education through the Settlement Agreement resulting from A.B.'s First Complaint.

16. Over APA's objection, on February 26, 2018 the Hearing Officer granted Defendants' request to withdraw A.B.'s Second Complaint without prejudice, resulting in APA obtaining significant legal costs to defend itself.

17. An IEP team meeting was convened on February 20, 2018 to assess A.B.'s progress since starting at Accotink Academy. The team, including Defendant Williams and an educational advocate working for Defendant JEB ("JEB educational advocate") in coordination with Defendant McQueen, discussed how A.B. was adjusting to the new environment, concerns about his refusal to do work, and proposed changes to his behavior intervention plan ("BIP").

18. On March 12, 2018, APA's counsel sent Defendant Williams' JEB educational advocate an email proposing a second progress meeting to be held on March 20 or 22, 2018.

19. After not hearing back, APA's counsel sent a follow-up email on March 20, 2018, suggesting meeting dates in April. On March 23, 2018, APA's Director of Scholar Support sent another email proposing meeting dates in April. Defendant McQueen wrote back that morning that he was available on April 12, 2018.

20. Also, on March 23, 2018, an attempt to redirect A.B. escalated, resulting in A.B. threatening to kill one of his teachers. A.B. then took out a shoelace and wrapped it around his neck.

21. Immediately following the incident, Dr. Vien, the licensed clinical psychologist at Accotink Academy who worked directly with A.B., assessed him for risk to himself or

others. A.B. denied trying to hurt himself or having suicidal ideations. It was Dr. Vien's professional opinion that A.B. was not a danger to himself and did not need a psychiatric evaluation or further intervention.

22. After the March 23, 2018 incident, Defendant Williams took A.B. to Children's National Hospital to be assessed. The report prepared by Children's Hospital indicates that A.B. "has good insight to what had occurred earlier today at school" and that "[h]e is not feeling depressed nor does he have any suicidal or homicidal ideation."

23. On that same day, the JEB educational advocate emailed APA and Accotink Academy noting the incident and requesting a psychiatric evaluation.

24. Dr. Vein responded almost immediately recounting her assessment of A.B. and professional opinion that a psychiatric evaluation was not necessary.

25. The next week school was closed for Spring Break.

26. The team met on April 12, 2018. The team discussed the March 23, 2018 incident. All team members agreed they had never witnessed A.B. make such statements before or since. Defendant Williams shared that the doctor(s) A.B. saw at Children's Hospital did not have any psychiatric concerns and that the doctor told her A.B.'s actions were likely done out of anger.

27. At the April 12, 2018 meeting, Dr. Vien reviewed the Contract for Safety that Accotink uses with students who have actual ideations of suicide (versus students who may make statements out of anger), and the team agreed it did not make sense for a Contract for Safety to be completed with A.B. All team members agreed that they believed the March 23, 2018 incident occurred because A.B. was angry, not because he wanted to hurt himself.

28. The school-based team indicated that they did not believe that a psychiatric evaluation would provide any additional information about A.B.'s educational needs. Comprehensive psychological evaluations had been conducted in May 2017 and October 2017 and both APA and Accotink Academy had collected additional data regarding A.B.'s education needs through their interactions with him. Furthermore, the experts at both APA and Accotink Academy stated that psychiatric evaluations do not typically reveal data regarding specific educational needs. Accordingly, APA determined to deny the request for a psychiatric evaluation.

29. On April 19, 2018, the prior written notice denying the request for the evaluation was sent to Defendant Williams via counsel.

30. On July 12, 2018, Defendants emailed a referral from Dr. Vivienne Gomes, a psychiatrist with MBI Health Services – A.B.'s private psychiatrist, for a neuropsychological evaluation. The referral is dated July 2, 2018. The referral does not include any mention of a psychiatric evaluation. In the email, the legal assistant requests a neuropsychological evaluation and a psychiatric evaluation be performed on A.B.

31. On July 13, 2018, a JEB educational advocate sent an email, also requesting a neuropsychological and psychiatric evaluation, as well as updated records.

32. On July 13, 2018, APA responded through counsel, agreeing to the neuropsychological evaluation and denying the psychiatric evaluation for the same reasons previously stated.

33. On July 26, 2018, Defendant Williams, represented by Defendant McQueen, filed a third administrative due process complaint on behalf of A.B. against APA (A.B.'s Third Complaint).

34. A.B.'s Third Complaint alleged the following single issue, which was addressed at hearing:

> Whether [the school] denied [the Student] a [free appropriate public education ("FAPE")] by failing to conduct or authorize funding of a psychiatric evaluation of Student in response to [the parent's] request?

35. For relief, Defendants sought that APA be ordered to conduct or fund a psychiatric evaluation; provide compensatory education; and pay reasonable attorneys' fees and costs.

36. A resolution meeting was scheduled for August 22, 2018. However, that same day, Defendant McQueen sent an email stating that he would no longer be handling the matter and that a new JEB attorney, Defendant Mendoza, would take over the matter. Accordingly, the resolution meeting was postponed.

37. The prehearing conference, which was scheduled for August 24, 2018 was also postponed for the same reason.

38. A prehearing conference was held in this matter on September 5, 2018. During the prehearing conference, potential witnesses were discussed. The Hearing Officer indicated that it would be beneficial to hear from the A.B.'s treating psychiatrist. Defendant Mendoza said that she would try, but that the psychiatrist had not been very cooperative.

39. The hearing was held on October 23, 2018. The first witness to testify on behalf of Defendant Williams was a psychiatric nurse practitioner who had been designated as an expert. On direct examination, the witness testified that it was his opinion that A.B. could benefit from a psychiatric evaluation for purposes of medication management, but that a psychiatric evaluation would not yield information regarding educational needs. Specifically, the witness testified that the appropriate evaluation for making determinations about specific educational needs was a neuropsychological evaluation.

9

40. After the first witness testified, the Hearing Officer indicated that he understood from Defendant Mendoza's witness that A.B. required a psychiatric evaluation for medication management. He said that whether or not medication management is a school's responsibility is a legal question not raised in the complaint. Defendant Mendoza agreed and indicated it was not her contention that medication management was the responsibility of the school. The Hearing Officer asked if Ms. Mendoza wanted to continue the hearing given how her witness had just testified. Ms. Mendoza indicated that she would have another expert witness who would testify differently. Accordingly, the hearing proceeded.

41. The second expert witness was an educational advocate employed by Defendant JEB. The JEB advocate testified that a psychiatric evaluation would provide additional information because it would provide a "psychopathology diagnosis and a management plan." She testified that a "psychopathology diagnosis" is the medical diagnosis. When questioned by the Hearing Officer exactly how the psychiatric evaluation would yield additional information about a student's diagnosis, the JEB advocate suggested that it would be done through blood work, which the advocate later conceded was not part of the psychiatric evaluation.

42. Ultimately, the second expert offered by the Defendants (and employed by Defendant JEB) presented no evidence on additional information a psychiatric evaluation would provide that the team did not already possess, or that might otherwise be used for A.B's educational programming.

43. On November 10, 2018, a Hearing Officer Determination ("HOD") was issued in this case finding that APA has "comprehensively evaluated Student to determine [A.B.'s] eligibility for special education and [A.B.'s] educational, social emotional and related service needs,"

and that Defendants "did not sustain the burden of persuasion by a preponderance of the evidence that [APA] denied [A.B.] a FAPE by failing [to] conduct or authorize funding of a psychiatric evaluation of [A.B.] in response to [Defendants'] request."

44. The November 10, 2018 HOD dismissed A.B.'s Third Complaint with prejudice, and denied all of the Defendants' requested relief.


## II.    C.W. Hearings

45. C.W. was initially found eligible for special education and related services under the IDEIA on June 28, 2017.

46. C.W.'s initial IEP is dated September 5, 2017.

47. On or about July 28, 2017 Defendant Williams, represented by Defendant McQueen, filed a due process complaint on behalf of C.W. alleging that APA denied C.W. a free appropriate public education ("FAPE") by failing to find him eligible for IDEA services in February 2016 ("C.W.'s First Complaint").

48. On September 21, 2017, the parties reached a settlement agreement resolving C.W.'s First Complaint.

49. C.W.'s IEP team met for a 30-Day Review meeting on November 1, 2017 to review how C.W. was progressing with the supports provided by the September 5, 2017 IEP.

50. The team discussed that C.W. had been making some progress, especially in math. The team also discussed whether or not he required a more restrictive setting.

51. The parties disagreed about whether or not C.W. required a more restrictive setting, but ultimately agreed to reconvene right before the Thanksgiving break to review progress again.

52. The team held a follow-up meeting on November 21, 2017. At this meeting, the team discussed that the school had seen a notable improvement in C.W.'s behavior and ability to focus in class. During the meeting, C.W. was brought in and the JEB educational advocate reiterated to C.W. the wonderful things his teachers had said and told him he was doing a great job. As a result, all the members of the team, including Defendant Williams and the JEB educational advocate, decided to maintain the current IEP and BIP. The only change decided by the team was to move C.W.'s seat from the back to the front of the classroom.

53. The team met again on February 27, 2018. At this meeting, the team discussed an increase in negative behaviors and a decrease in grades, in part due to a failure to turn in homework consistently.

54. To address these concerns, APA suggested an increase in behavior support services and proposed to conduct a functional behavior assessment ("FBA"). To address the issues with homework, APA proposed the use of a planner and more communication between teachers and Defendant Williams. Defendant Williams agreed to these changes and to the FBA.

55. An amendment implementing the changes to C.W.'s behavior support was made to the IEP on March 1, 2018.

56. On March 15, 2018, C.W. was suspended for 2 days. Per APA's protocol, a re-entry meeting was scheduled for March 20, 2018.

57. The IEP team met on March 20, 2018 for the re-entry meeting to discuss C.W.'s behavior incident. The team decided to switch C.W.'s advisory (the cohort of students grouped together for classes).

58. On March 19, 2018, the JEB educational advocate sent two emails: one requesting a social history and psychiatric evaluation, and a second email containing a dissent letter. The dissent letter stated that the Defendants believed that APA was an inappropriate placement for C.W. and that he required a more restrictive setting.

59. On March 23, 2018, in response to the request by Defendant McQueen and the JEB educational advocate, APA offered to conduct a social history evaluation, including specific trauma screeners, and use that evaluation to determine if any further evaluations would be helpful. APA also responded to the March 19, 2018 dissent letter, disagreeing that the data supported a change in placement but offering to submit a parent-requested change in placement referral to OSSE.

60. C.W.'s advisory was switched during the week of April 9, 2018.

61. On April 25, 2018, a month after APA's counsel sent the March 23, 2018 email, Defendant McQueen responded and agreed to the social history evaluation and declined the parent-requested referral.

62. An FBA was completed in April. The final report is dated April 10, 2018.

63. A social history evaluation, including trauma screeners, was completed in May. It is dated May 20, 2018.

64. The team met on June 5, 2018 to review the evaluations. During the meeting, the team also discussed other strategies to address behavior issues.

65. The team noted that since C.W. had changed advisories during the week of April 9, 2018, the staff had seen an improvement in his behavior. The personalities of the students in the new advisory was different from those in the previous advisory in that the students were generally more well-behaved, focused on their school work, and less likely to engage in

off-task or silly antics. The team unanimously agreed that having well-behaved peers from which to model his behavior had a positive impact on C.W. and was one of the most successful strategies to date.

66. The data supported a positive change in behavior as well. Since the change in advisory, C.W. had earned the behavior-based reward of being able to dress down almost every week. This indicated that C.W. had been receiving more positive feedback and less negative feedback since the change.

67. The team discussed modifications to C.W.'s BIP and agreed that once the draft was developed, it would be sent to the Defendants. If everyone agreed with the modifications, it would be finalized. If not, the team would hold another meeting.

68. The draft BIP was sent to Defendant McQueen on June 12, 2018.

69. Overall, C.W.'s progress reports and grades from the 2017-2018 school year indicated that he made progress. C.W. passed all of his 6th grade classes with the exception of Technology. In regard to his academic classes, C.W. earned an A in Writing, C's in History and Math, and a B in Reading.

70. On July 10, 2018, APA received a dissent letter email from the JEB educational advocate requesting a change-in-placement.

71. Also, on July 10, 2018, Defendant Williams, represented by Defendant McQueen, filed a second administrative due process complaint on behalf of C.W. against APA ("C.W.'s Second Complaint").

72. C.W.'s Second Complaint alleged the following single issue:

> Whether [the school] denied the Student a FAPE by failing to revise the student's IEP and/or placement after the parent requested it be changed on March 19, 2018?

14

73. For relief, Defendants sought: a finding that C.W. required placement at a full-time therapeutic day school; compensatory education; and reasonable attorney fees and costs.

74. A resolution meeting occurred on July 24, 2018. The team discussed Defendant McQueen's proposed resolution offer. Defendant McQueen asserted that the resolution offer reflected a timeframe and violations in addition to what was contained in C.W.'s Second Complaint. Defendant McQueen indicated that he intended to correct the complaint by raising the issues of timeframe and additional violations with the Hearing Officer.

75. A prehearing conference was scheduled for August 22, 2018.

76. During the prehearing conference, Defendant McQueen stated that Defendant Mendoza would be taking over as counsel and that they planned to amend or withdraw C.W.'s Second Complaint. Accordingly, the Hearing Officer canceled the prehearing conference.

77. On September 6, 2018, after no movement had occurred regarding the pending due process complaint, the Hearing Officer emailed Defendant Mendoza requesting an update.

78. That same day, Defendant Mendoza filed a notice of appearance and an amended due process complaint.

79. C.W.'s Second Complaint as amended was exactly the same as the original due process complaint except it extended the period of the alleged violation from starting in March 2018 to starting in December 2017. This amendment was based on a dissent letter sent via email in October 2017 by the JEB educational advocate. Defendant McQueen had been copied on that email.

80. The hearing in this matter was held on November 14, 2018 and December 4, 2018.

81. Defendant Williams testified at the hearing. On cross examination, Defendant Williams testified that that she would not have to pay any attorneys' fees if she continued litigation,

but that if she agreed to a settlement, she would be liable for fees to the Defendant JEB attorneys.

82. On December 14, 2018, the final Hearing Officer Determination was issued on C.W.'s Second Complaint as amended. The Hearing Officer found that the school met its burden and did not deny C.W. a FAPE for failing to revise his IEP in December 2017. Further the Hearing Officer stated that there was no legal authority to hold a school liable under the circumstances presented by the Defendants. Specifically, the Hearing Officer Determination states:

> Petitioner presented no caselaw holding a school district liable for failing to revise an IEP only three months after the IEP in question took effect. Moreover, this Hearing Officer, through independent research, has found no cases where a school district was found to have failed to revise an IEP that was created approximately three months prior to the date a petitioner claimed the IEP should have been revised. It is important to note that Petitioner, at a time when she was represented by counsel, agreed with the Student's first IEP in September 2017.

83. C.W.'s Second Complaint as amended was dismissed with prejudice, and no relief was provided to Defendants.

84. On April 30, 2019, Defendant Williams, represented by Defendant JEB and Defendant Kiran Hassan, filed another due process complaint related to C.W. ("C.W.'s Third Complaint") in part repeating allegations that were litigated and dismissed in the first C.W. Hearing.

85. Specifically, C.W.'s Third Complaint alleges that: (1) C.W.'s IEP, developed and agreed to by Defendants Williams, JEB counsel, and JEB educational advocate on March 27, 2019 (a month earlier) was inappropriate; and (2) APA failed to evaluate C.W. in all areas of suspected disability by failing to conduct an updated FBA and BIP.

86. The Hearing Officer Determination (HOD) was issued on June 30, 2019 and denied all of Defendants' requested relief.

87. Regarding the first issue, the HOD emphasized that Defendants attended the IEP meeting on March 27, 2019 and agreed to the revisions made in response to Defendants' specific requests. The HOD repeatedly notes that Defendants did not send a dissent letter regarding the IEP until after the due process complaint was filed. Accordingly, based on the information that APA had at the time and Defendants' noted agreement, the Hearing Officer held the March 2019 IEP was appropriate.

88. Regarding the second issue, APA had conducted independent FBAs for the student in May 2017 and April 2018. The Hearing Officer found that the JEB educational advocate "only sent the dissent letter after the due process complaint was filed" seeking an FBA, and "[t]here was no evidence that the parent or her representatives had requested that an updated FBA be conducted at the March 27, 2019 IEP team meeting."

89. Further, the HOD noted that Defendants made no "attempt to make a showing that the March 27, 2019 BIP was not appropriate for Student."

\*    \*    \*

90. APA attorneys Jennifer Mauskapf, Erin Auerbach, Megan Trachman, and Monica Munin with the law firm of Brustein & Manasevit, PLLC represented APA in the underlying proceedings.

91. IDEIA, 20 U.S.C. § 1415(i)(3)(C) states that hourly rates "shall be based on rates prevailing in the community in which the action or proceeding arose and the kind and quality of

17

services furnished." In the District of Columbia, typically the prevailing rate is considered to be 75 percent of the United States Attorney Office Laffey Matrix. *See Muskelly v. DCPS*, 119 LRP 3522 (Feb. 5, 2019).

92. Ms. Auerbach is licensed with the Maryland (deferred status) and District of Columbia bars and has been practicing law for 9.5 years. She was admitted to the DC Bar in 2011.

93. Ms. Mauskapf is licensed with the New York and District of Columbia bars and has been practicing law for 13.5 years. She was admitted to the DC Bar in 2006.

94. Ms. Trachman is licensed with the Massachusetts and District of Columbia bars and has been practicing law for 5 years. She was admitted to the DC Bar in 2017.

95. Ms. Munin is licensed with the District of Columbia bar and has been practicing law for 3 years. She was admitted to the DC Bar in 2016.

96. According to the 2018-2019 United States Attorney's Office for the District of Columbia Laffey Matrix, the hourly rate for attorneys with 2-3 years of experience is $340 per hour. Seventy-five percent of this rate is $255. Attorneys with 4-5 years of experience bill $351 per hour. Seventy-five percent of this rate is $263.25. Attorneys with 8-10 years of experience bill $417 per hour. Seventy-five percent of this rate is $312.75 per hour. Attorneys with 11-15 years of experience charge $491 under this matrix. Seventy-five percent of this rate is $368.25.

97. Ms. Auerbach spent a total of 70.75 hours, Ms. Mauskapf spent a total of 21.5 hours, and Ms. Trachman spent a total of 3.25 hours related to the A.B. Hearing on the underlying A.B. Third Complaint from July 26, 2018 to November 10, 2018.

98. Ms. Auerbach spent a total of 111 hours and Ms. Mauskapf spent a total of 44.75 hours related to the first C.W. Hearing (C.W. Hearing on the underlying C.W. Second Complaint) from July 10, 2018 to December 4, 2018.

99. Ms. Auerbach spent a total of 70.5 hours, Ms. Mauskapf spent a total of 5.25 hours, and Ms. Munin spent a total of 3.5 hours on the second C.W. Hearing (C.W. Hearing on the underlying C.W. Third Complaint) from April 30, 2019 to June 30, 2019.

100.    Based on a rate of $312.75 per hour for Ms. Auerbach, a rate of $368.25 per hour for Ms. Mauskapf, a rate of $263.25 per hour for Ms. Trachman, and a rate of $255 per hour for Ms. Munin, the 254.75 hours of work to litigate three administrative hearings resulted in $30,900 in attorneys' fees related to the A.B. Hearing on the underlying A.B. Third Complaint, $51,19.44 in attorneys' fees related to the C.W. Hearing on the underlying C.W. Second Complaint, and $24,874.69 in attorneys' fees related to the C.W. Hearing on the underlying C.W. Third Complaint.  In addition to attorneys' fees, APA counsel incurred expenses for copies and travel related to the A.B. and C.W. Hearings, totaling $981.43.

### Count I, Frivolous (A.B.'s Third Complaint)

101.    Plaintiff incorporates by reference paragraphs 1-44; 90-100.

102.    The IDEIA, 20 U.S.C. § 1415(i)(3)(B)(i)(II) provides that a court, in its discretion, may award reasonable attorneys' fees to a prevailing party who is an LEA "against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation."

103.    On November 10, 2018, the Hearing Officer dismissed A.B.'s Third Complaint with prejudice. As such, APA is the prevailing party.

104.     Defendant McQueen and Defendant JEB's filing of A.B.'s Third Complaint was frivolous, unreasonable and without foundation.

105.     At the time the complaint was filed no professional working with A.B., including APA's staff, Accotink's staff, the doctor(s) that attended to A.B. at Children's Hospital, and the Student's private psychiatrist, believed that a psychiatric evaluation was necessary to determine A.B's educational needs.

106.     Additionally, over the two and a half years prior to the request for the psychiatric evaluation, numerous evaluations had been performed on behalf of A.B. Between the numerous evaluations and data collected both by APA and Accotink staff, at the time the request was made, the IEP team had a significant amount of information and recommendations for treatment and interventions for A.B. None of the evaluations recommended a psychiatric evaluation be conducted.

107.     Furthermore, APA had agreed to obtain a neuropsychological evaluation on behalf of A.B. as suggested by A.B.'s private psychiatrist. Significantly, A.B.'s private psychiatrist did not indicate a psychiatric evaluation was necessary.

108.     Prior to filing the complaint, the Defendants had no evidence that a psychiatric evaluation would yield educational information that had not been addressed by a previous evaluation, or would be addressed by the neuropsychological evaluation.

109.     The Defendants' own expert witnesses testified that a psychiatric evaluation would not provide the educational information claimed necessary in the complaint, rather the neuropsychological was the appropriate evaluation for educational programming.

110.     In sum, there was no evidence available to support Defendants' contention that a psychiatric evaluation was necessary.

111.    Accordingly, at the time the complaint was filed, the Defendants lacked legal authority and evidentiary support for the case and had no chance of success.

112.    Because APA is the prevailing party and the underlying due process complaint was frivolous, unreasonable, and without foundation, Plaintiff is entitled under 20 U.S.C. § 1415(i)(3)(B)(i)(II) to an award of attorneys' fees for work performed related to the July 26, 2018 Due Process Complaint (A.B.'s Third Complaint).

### Count II, Frivolous (A.B.'s Third Complaint)

113.    Plaintiff incorporates by reference paragraphs 1-44; 90-100.

114.    The IDEIA, 20 U.S.C. § 1415(i)(3)(B)(i)(II) provides that a court, in its discretion, may award reasonable attorneys' fees to a prevailing party who is an LEA "against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable or without foundation."

115.    Defendants Mendoza and James E. Brown and Associates continued to litigate A.B.'s Third Complaint after the litigation clearly became frivolous, unreasonable and without foundation.

116.    A.B.'s private psychiatrist had written a referral for a neuropsychological evaluation; but, had never written a referral or, as far as APA is aware, ever indicated that A.B. required a psychiatric evaluation.

117.    During the prehearing conference, the Hearing Officer stated that it would be helpful to hear from A.B.'s private psychiatrist during the hearing. Defendant Mendoza indicated that she would try, but that the psychiatrist had not been cooperative.

118.    However, Defendant Mendoza did not request a subpoena to obtain the doctor's testimony. Rather, she found a psychiatric nurse to testify as her expert witness.

119.     Based on these facts, it is not unreasonable to assume that A.B.'s private psychiatrist did not agree that A.B. required a psychiatric evaluation.

120.     By the date of the prehearing conference or soon after, it should have been clear to Defendants that there was no educational basis for requesting a psychiatric evaluation, and the Defendants had no chance for success at hearing. Despite this, Defendant Mendoza continued to litigate the case.

121.     During the hearing, the Defendants' first witness, and only witness qualified as an expert in psychiatry, testified that A.B. may need a psychiatric evaluation for medication management. However, the witness went on to testify that such an evaluation would not provide any additional information about A.B.'s educational needs.

122.     After Defendants' first expert witness testified, the Hearing Officer asked Defendant Mendoza if she wished to continue with the hearing as her first witness testified that the psychiatric evaluation would not provide the information the Defendants' claimed it would, and because whether or not medication management was the school's responsibility was a legal issue outside the scope of the complaint.

123.     Despite the expert testimony from the Defendants' own witness and the Hearing Officer's warning, Defendant Mendoza continued to litigate the case.

124.     Defendant Mendoza's only other expert witness also was not able to describe why a psychiatric evaluation was necessary. However, again Defendant Mendoza continued to litigate the case.

125.     Because APA is the prevailing party and the Defendants continued to litigate after it was clear that the litigation was frivolous, unreasonable, and without foundation, Plaintiff

is entitled under 20 U.S.C. § 1415(i)(3)(B)(i)(II) to an award of attorneys' fees for work performed related to the July 26, 2018 Due Process Complaint (A.B.'s Third Complaint).

### Count III, Frivolous (C.W.'s Second Complaint)

126.     Plaintiff incorporates by reference paragraphs 1-7; 45-100.

127.     The IDEIA, 20 U.S.C. § 1415(i)(3)(B)(i)(II) provides that a court, in its discretion, may award reasonable attorneys' fees to a prevailing party who is an LEA "against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation."

128.     On December 14, 2018, the Hearing Officer dismissed C.W.'s Second Complaint as amended with prejudice. As such, APA is the prevailing party.

129.     Defendants' filing of C.W.'s Second Complaint and the subsequent amendment was frivolous, unreasonable and without foundation because at the time the complaint was filed, the Defendants lacked legal authority and evidentiary support for the case and had no chance of success.

130.     On September 5, 2017, the entire IEP team, including applicable Defendants, agreed to an initial IEP for C.W.

131.     C.W.'s IEP team met multiple times between the finalization of the IEP and December 2017 to monitor C.W.'s progress with the new IEP in place. At one point, the Defendants' educational advocate commented on the success C.W. had experienced with the benefits of the IEP's support.

132.     Despite this, Defendants, in the C.W.'s Second Complaint as amended argued that as of December 2017 (just three months after C.W.'s initial IEP had been agreed-to and implemented), the school should have increased the level of services in the IEP.

133.     As noted by the Hearing Officer, the Defendants provided no legal authority that supports a claim that an IEP – particularly an IEP that the entire IEP team has agreed to – be modified only three months after initial implementation.

134.     Moreover, Defendants failed to provide any evidence to support the claim that the IEP should have been revised in December 2017. The evidence contradicts such a claim, as again, the entire IEP team, including applicable Defendants, had reviewed and agreed to the IEP as recently as November 21, 2017, and had reviewed and agreed to the IEP and related adjustments in February, March and June of 2018.

135.     Because APA is the prevailing party and C.W.'s Second Complaint was frivolous, unreasonable, and without foundation, Plaintiff is entitled under 20 U.S.C. § 1415(i)(3)(B)(i)(II) to an award of attorneys' fees for work performed related to the July 10, 2018 administrative due process complaint, as amended on September 6, 2018 (C.W.'s Second Complaint).

### Count IV, Frivolous (C.W.'s Third Complaint)

136.     Plaintiff incorporates by reference paragraphs 1-7; 45-100.

137.     The IDEIA, 20 U.S.C. § 1415(i)(3)(B)(i)(II) provides that a court, in its discretion, may award reasonable attorneys' fees to a prevailing party who is an LEA "against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation."

138.     On June 30, 2019, the Hearing Officer dismissed C.W.'s Third Complaint denying all requested relief. As such, APA is the prevailing party.

139.     Defendants' filing of C.W.'s Third Complaint was frivolous, unreasonable and without foundation because at the time the complaint was filed, the Defendants lacked legal authority and evidentiary support for the case and had no chance of success.

140.     On March 27, 2019, the entire IEP team, including applicable Defendants, agreed to a revised IEP for C.W.

141.     During the meeting, applicable Defendants requested additional pull-out services, which APA agreed to over staff concerns.

142.     Despite this, one-month later, Defendants filed a complaint alleging the IEP was inappropriate and that APA failed to evaluate in all required areas by failing to provide an updated FBA.

143.     As noted repeatedly by the Hearing Officer, Defendants' dissent letter objecting to the March 2019 IEP and requesting an updated FBA and full-time private school placement was provided *after the filing of the due process complaint.*

144.     The Defendants presented no evidence in support of its claim that an updated FBA was requested and that the current BIP was inappropriate.

145.     Because APA is the prevailing party and C.W.'s Third Complaint was frivolous, unreasonable, and without foundation, Plaintiff is entitled under 20 U.S.C. § 1415(i)(3)(B)(i)(II) to an award of attorneys' fees for work performed related to the July 10, 2018 administrative due process complaint, as amended on September 6, 2018 (C.W.'s Second Complaint).

## Count IV, Improper Purpose (A.B.'s Third Complaint and C.W.'s Second and Third Complaints)

146.     Plaintiff incorporated by reference paragraphs 1-145.

147.     The IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(III) provides that a court, in its discretion, may award reasonable attorneys' fees to a prevailing party who is an LEA "against the attorney of a parent, or against the parent, if the parent's request for a due process hearing or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation."

148.     The Defendants' filing of A.B.'s Third Complaint, C.W.'s Second Complaint (and related amendment), and C.W.'s Third Complaint was presented for an improper purpose.

149.     The Defendants have filed a total of 6 due process complaints against APA; three of those complaints were on behalf of A.B, and three on behalf of C.W.

150.     A.B.'s Second Complaint alleged violations overlapping with A.B.'s First Complaint (resolved through settlement), and had no chance of success. As a result, A.B.'s Second Complaint was withdrawn by Defendants.

151.     A.B.'s Third Complaint was frivolous and unfounded when filed. Further, the Defendants, at multiple points in the litigation of A.B.'s Third Complaint, were made aware that the complaint had no chance of success but continued to pursue the litigation.

152.     Likewise, C.W.'s Second Complaint as amended was frivolous and without legal or evidentiary support when filed. The only difference between C.W.'s Second Complaint filed on July 10, 2018 and the amendment filed on September 6, 2018 is the extension of the violation time-period based on information that the Defendants had at the time of the filing of the original due process complaint. In fact – the amendment was based on a letter sent to the school by the Defendants. The September 6, 2018 amendment prolonged the litigation and led the Plaintiff to needlessly incur more attorney fees.

153.     The timeline of the filing of C.W.'s Second Complaint and the amendment also suggests an improper purpose of harassment, delay and the needless increase of litigation costs.

154.     C.W.'s Second Complaint was filed almost simultaneously with a separate complaint filed by Defendants related to C.W.'s brother, A.B. In the resolution meeting for C.W.'s Second Complaint, Defendant McQueen acknowledges mistakes in the hastily filed complaint.

155.     Notably, this is not the first time Defendants filed separate complaints on the brothers around the same time. The first A.B. due process complaint was filed on June 27, 2017. Just a month later, on July 28, 2017 the first C.W. due process complaint was filed. This strategy of filing multiple due process complaints over the same time period overwhelms the Plaintiff in terms of staff's time spent preparing for and participating in due process hearings. Further, it results in a large increase in legal fees over the time period of the pending complaints. This conduct is yet another example of the Defendants' intent to harass the Plaintiff and needlessly increase the cost of litigation.

156.     In light of Defendant McQueen's acknowledged mistakes within C.W.'s Second Complaint, and as the Defendants transitioned counsel from Defendant McQueen to Defendant Mendoza, Defendant Mendoza states that an amended complaint would be forthcoming during the pre-conference hearing on August 22, 2018.

157.     Only at the Hearing Officer's prompting, over two weeks after Defendant Mendoza noted her intent to amend the complaint, did the Defendants file the amended complaint on September 6, 2018. No changes were made to the complaint other than the time period of the violation.

158.     Additionally, Defendant Hassan filed C.W.'s Third Complaint one month after an
IEP meeting in which all parties agreed to the revised IEP. Only after the due process
complaint was filed did Defendants submit a dissent letter objecting to the IEP and
requesting an updated FBA and private placement.

159.     As testified to by Defendant Williams during the first C.W. Hearing, JEB does not
generally charge parents for the legal services the firm's attorneys provide unless the parent
settles the claim. Not only does this practice discourage parents from resolving complaints
with LEAs amicably, it also prolongs litigation, increasing the hours JEB spends on a
matter and thereby increases the amount the firm can claim in an invoice or lawsuit for
attorneys' fees.

160.     It is Plaintiff's contention that Defendants McQueen, Mendoza, Hassan and JEB
filed A.B.'s Third Complaint, C.W.'s Second Complaint and the related amendment, and
C.W.'s Third Complaint not because they believed that an IDEIA violation occurred, but
for the purpose of earning attorneys' fees.  In addition, Plaintiff contends that Defendant
Williams pursued these complaints through hearing in order to avoid paying attorneys'
fees.

161.     Because APA is the prevailing party in all three hearings and Defendants filed the
underlying complaints for improper purposes, under 20 U.S.C. § 1415(i)(3)(B)(i)(III),
Plaintiff is entitled to an award of attorneys' fees for work performed related to A.B.'s
Third Complaint and C.W.'s Second and Third Complaints.

### Relief

Wherefore, Plaintiff respectfully asks that the Court grant the following relief:

A. Find that Defendants' filing of the July 26, 2018 administrative due process complaint on behalf of A.B. (A.B.'s Third Complaint) was frivolous, unreasonable and without foundation;

B. Find that Defendants continued to litigate the July 26, 2018 administrative due process complaint (A.B.'s Third Complaint) after the litigation had become frivolous, unreasonable and without foundation;

C. Find that Defendants' filing of the July 10, 2018 administrative due process complaint, as amended on September 6, 2018, on behalf of C.W. (C.W.'s Second Complaint) was frivolous, unreasonable and without foundation;

D. Find that Defendants' filing of the April 30, 2019 administrative due process complaint (C.W.'s Third Complaint) was frivolous, unreasonable and without foundation;

E. Find that Defendants' filing of the July 26, 2018 administrative due process complaint (A.B.'s Third Complaint), the July 10, 2018 administrative due process complaint including the September 6, 2018 amendment thereto (C.W.'s Second Complaint), and the April 30, 2019 administrative due process complaint (C.W.'s Third Complaint) was presented for an improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

F. Award to Plaintiff $30,900.00 as payment of attorneys' fees for APA's representation related to the July 26, 2018 administrative due process complaint (A.B.'s Third Complaint) filed and litigated by Defendants;

G. Award to Plaintiff $51,194.44 as payment of attorneys' fees for APA's representation related to the July 10, 2018 administrative due process complaint including the September 6, 2018 amendment thereto (C.W.'s Second Complaint) filed and litigated by Defendants;

H. Award to Plaintiff $24,874.69 as payment of attorneys' fees for APA's representation related to the April 30, 2019 administrative due process complaint (C.W.'s Third Complaint) filed and litigated by Defendants;

I. Award to Plaintiff $981.43 as payment of related costs for APA's representation in the A.B. and C.W. Hearings;

J. Award Plaintiff payment of attorneys' fees and related costs for APA's representation in the current proceeding; and

K. Order any such other relief as the Court deems just and proper.

Respectfully submitted,

Leigh Manasevit, Esq. D.C. Bar No. 260851
Bonnie Little Graham, Esq. D.C. Bar No. 997264
ERIN AUERBACH, Esq. Bar No. DC 999111
Jennifer Mauskapf, Esq. D.C. Bar No. 499205
Brustein & Manasevit, PLLC
1023 15th Street, NW
Suite 500
Washington, D.C. 20005
(202) 965-3652
Counsel for Plaintiff APA

August 28, 2019